IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATALLIA PIUTA<br>108 Woodbridge Ct S<br>Feasterville PA 19053<br><br>         Plaintiff,<br><br>v.<br><br>EQUINOX INSTITUTIONAL<br>ASSET MANAGEMENT, LP<br>47 Hullfish St., Suite 510<br>Princeton, NJ 08542<br><br>         Defendant. | CIVIL ACTION<br><br>No. _____<br><br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### I.   INTRODUCTION

1. This action has been initiated by Natallia Piuta (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Equinox Institutional Asset Management, LP (*hereinafter* referred to as "Defendant") for violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000d *et. seq.*), and the New Jersey Law Against Discrimination ("NJ LAD"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### II.   JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of

jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

5. Plaintiff is proceeding herein under the Title VII, 42 U.S.C. § 1981, and the NJ LAD, and has properly exhausted her administrative remedies with respect to her Title VII claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC

### III.  PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is a privately owned hedge fund sponsor that also acts as a commodity trading advisor and commodity pool operator.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV.     FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff was born in Belarus, is of the Slavic race, and has a discernible accent.

12.     Plaintiff was employed with Defendant for approximately four months, from on or about September 13, 2017 through on or about January 10, 2018, working as a Controller handling an array of accounting and financial responsibilities.

13.     Prior to her employment with Defendant, Plaintiff had already established herself as an academic and valued financial professional.

14.     After graduating near the top of class in her native Belarus with a degree in Global Economy, Plaintiff relocated to the United States to further her education at Temple University.

15.     At Temple University, she once again graduated near the top of her class, this time obtaining a degree in Finance.

16.     Upon her graduation from Temple University, Plaintiff garnered valued experience working as a financial professional at the Vanguard Group between 2010 and 2012.

17.     From in or about 2012 through in or about 2017, Plaintiff continued her professional growth at Brandywine Global Investment Management LLC, working as an Investment Operations Supervisor.

18.     While employed with the Brandywine Global Investment Management LLC, Plaintiff also became a licensed Certified Public Accountant (CPA).

19.     In college and professionally, Plaintiff worked in collaborative environments that fostered teamwork and flexibility.  She was well aware of the expectations necessary to

3

successfully work in the financial world, and it was that level of pedigree which led her to a position with Defendant.

20.     On or about August 15, 2017, Plaintiff was offered and signed an employment contract with Defendant to serve in the role of Controller and officially began working for Defendant on or about September 13, 2017.

21.     In her position with Defendant, Plaintiff was assigned under the supervision of Laura Latella (Chief Financial Officer (CFO), *hereinafter* "Ms. Latella") and Chelsea Furnas (incumbent Controller, *hereinafter* "Ms. Furnas"), who would train Plaintiff in her new role.

22.     Beginning almost immediately upon her hire with Defendant, Plaintiff was subjected to deleterious working conditions solely because of her race, national origin, and ethnic characteristics (particularly her accent/language).

23.     By way of example but not intended to be an exhaustive list:

   i. On or about October 13, 2017, Plaintiff was chastised by Ms. Latella for taking a lunch break. Having worked in professional environments that allow employees to leave for lunch, and ***having witnessed her own American coworkers leave for lunch***, Plaintiff decided to eat outside in the office courtyard for her lunch break. Upon her return, she was immediately scolded by Ms. Latella and told not to take any future lunch breaks outside (despite the fact that her American, non-Slavic co-workers were still permitted to leave the facility for lunch). Additionally, while scolding Plaintiff, Ms. Latella told Plaintiff that if she did not like their *culture* than she should leave;

4

ii. On December 8, 2017, Ms. Latella and Ms. Furnas met with Plaintiff to discuss her performance and inform her that her "probationary period" was being extended. This was the first time Plaintiff was ever informed she was on a "probationary period." In this meeting, Plaintiff was only told she needed to improve her "communication skills" and never informed about any alleged performance issues. In this meeting, Ms. Latella also made a discriminatory remark, stating to Plaintiff "I don't know where you came from but that is not our culture and if you don't like it you should leave," again directly referencing Ms. Piuta's national origin and threatening her with termination;

iii. From the very first day she started with Respondent, Plaintiff was made to feel unwelcomed by management and her coworkers. ***Ms. Latella regularly commented negatively about Ms. Piuta's accent (including her pronunciation of certain words and use of vocabulary) in front of the other coworkers, often to the point of embarrassment***. Ms. Furnas was almost always present for this public admonishment, and joined Ms. Latella in her harsh criticism of Ms. Piuta's "communications skills;"

iv. Plaintiff was also chastised by Ms. Latella in private meetings regarding her accent and alleged inability to "communicate;"

v. As a result of Defendant's management's discriminatory behavior, coworkers of Plaintiff followed suit and subjected her to discriminatory conduct in the form of rude and/or demeaning comments and behavior;

5

  vi. Almost on a daily basis, Plaintiff was mocked in the manner in which she spoke or blamed for mistakes unrelated to any task she was performing;

  vii. Plaintiff was further told on numerous occasions that "she didn't know anything" and to "communicate better;" and

  viii. When Plaintiff inquired about assistance or needed additional information to complete a task, other coworkers and management ignored her and generally ostracized her from group projects.

24. On or about January 10, 2018 (less than four months after Plaintiff officially began working for Defendant), Plaintiff was terminated from her employment with Defendant.

25. When Plaintiff inquired about the reason for her termination, she was given vague answers with no specifics, including but not limited to her "communication skills."

26. Notably, Plaintiff never received any written discipline regarding her work performance or communication skills by Defendant and was only verbally criticized about her alleged inability to "communicate" (not her actual work performance).

27. Plaintiff therefore believes and avers that her termination was completely pretextual and that she was really terminated because of her race and/or national origin.

## Count I
### Violations of 42 U.S.C. Section 1981
**(Race Discrimination - Hostile Work Environment & Wrongful Termination)**[1]

28. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[1] 42 U.S.C. §1981 protects against discrimination based on race, which includes discrimination based on one's ancestry or ethnic characteristics. *See St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (U.S. 1987)("Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory.")

6

29. Plaintiff was subjected to a hostile work environment during her period of employment by Defendant's management due to her race through disparate treatment, pretextual admonishment, derogatory comments/remarks, and demeaning and/or discriminatory treatment towards her.

30. Upon information and belief, Plaintiff was terminated from her employment with Defendant because of her race.

31. These actions as aforesaid constitute violations of 42 U.S.C. Section 1981.

**Count II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Race/National Origin Discrimination - Hostile Work Environment & Wrongful Termination)**

32. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

33. Plaintiff was subjected to a hostile work environment during her period of employment by Defendant's management due to her race and/or national origin through disparate treatment, pretextual admonishment, derogatory comments/remarks, and demeaning and/or discriminatory treatment towards her.

34. Upon information and belief, Plaintiff was terminated from her employment with Defendant because of her race and/or national origin.

35. These actions as aforesaid constitute violations of Title VII.

**Count III**
**Violations of the New Jersey Law Against Discrimination**
**(Race/National Origin Discrimination - Hostile Work Environment & Wrongful Termination)**

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Plaintiff was subjected to a hostile work environment during her period of employment by Defendant's management due to her race and/or national origin through disparate treatment, pretextual admonishment, derogatory comments/remarks, and demeaning and/or discriminatory treatment towards her.

38. Upon information and belief, Plaintiff was terminated from her employment with Defendant because of her race and/or national origin.

39. The foregoing conduct also constitutes violations of the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020

Date: November 21, 2018